## BRYANT v. LUTESVILLE SAND & GRAVEL CO. et al.
### No. 4899.

Court of Appeal of Louisiana.
Second Circuit.
Feb. 5, 1935.

Joel L. Fletcher, of Colfax, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

DREW, Justice.

On September 24, 1932, plaintiff, an employee of the Lutesville Sand & Gravel Company, while engaged in his duties for said company, had an accident. He described it as follows: "I was braking on the engine and it was about out of oil; didn't have enough oil to go in and back on and they had some stored in barrels and we had to pull it up on this tank by ropes, and we emptied one barrel entirely and the second barrel, they have got kind of a boom like that stuck up eight inches above the tank, and we had to lift the end of the barrel on to the boom, and the barrel slipped and when it slipped off, my hand-hold come loose and I went over backwards and the barrel caught my left foot on the hand-hold that goes round the tank and my foot was caught in between the barrel and the hand-hold, and I was thrown over backwards on the water tank, and I was laying over backwards on the water tank. The oil tank is about four feet above the water tank and when I went over I didn't have anything to catch on and just went over."

Plaintiff was immediately taken to defendant's doctor who examined him and, after having an X-ray made, found that a small bone of the left leg (the tibia) was fractured about three and one-half inches above the ankle joint. He continued under the care of defendant's doctor until November 9, 1932, when he was discharged as well. Defendant paid him compensation in the sum of $42.91 to cover the period of time from the date of the accident until November 9, 1932, or for a period of six weeks and four days. Plaintiff was still suffering and immediately went to another doctor, who treated him for some time thereafter. Being unable to secure further compensation, he filed the present suit against the Lutesville Sand & Gravel Company and its insurer, Maryland Casualty Company. He alleged that on September 24, 1932, while about defendant's business, he sustained an accidental injury in which his left foot was caught and mashed, and also his ankle and lower leg, bruising the flesh, breaking the bones of his foot, ankle, and leg, and that because of said injuries he has become permanently and totally disabled. He prayed for judgment for $7.48 per week, for 300 weeks, subject to a credit of the amount he had already been paid.

Both defendants admitted that the Maryland Casualty Company is the insurer of defendant. They also admitted that plaintiff was injured on the date alleged while performing services for his employer, and that as a result thereof he was disabled for several weeks. They denied that the injury was as severe as claimed or that it had resulted in any permanent disability. Defendants contend that the injury consisted of a slight fracture of the small bone of the leg, three and one-half inches above the ankle; that the broken leg, after being set, promptly healed, leaving plaintiff after a few weeks fully able to do the same type of work he was doing prior to the accident. Defendants further admitted the rate of pay per week, as alleged by plaintiff, and stated that they had paid compensation to him up to November 9, 1932, at which time he was discharged as cured and able to go to work.

Before going to trial, defendants paid plaintiff further compensation in the sum of $22.51, being the amount of compensation

due up to December 2, 1932, and paid the court costs to that date.

The lower court found that plaintiff had failed to make out his case, and dismissed his suit. He has perfected an appeal to this court.

█ The compensation paid by defendants to plaintiff covered ten weeks, for total loss of use of the foot for that period of time. In this suit plaintiff is making no claim for compensation on account of the fracture of the tibia. The evidence clearly shows that this fracture was slight and had thoroughly healed within the ten weeks' time for which he has been paid compensation. Plaintiff's contention in this case is that the ankle was injured. The principal testimony offered was in regard to the sprained ankle, strained ligaments, tendons, etc., of the ankle joint. This testimony was offered without objection and must be considered. There was no testimony as to any broken bones in the ankle. The medical testimony is most conflicting, as usual. The lay testimony as to the injured ankle is overwhelmingly in favor of plaintiff and shows conclusively that plaintiff, prior to the date of the accident, was an able-bodied, healthy man, a willing worker, and had been for a number of years engaged in very hard manual labor; that since the accident, which was more than a year before the trial below, he had constantly limped and complained of his ankle hurting him; and that he could not perform hard manual labor without great pain and swelling of the ankle. It is true that in the latter part of 1932 he worked one day a week on an E. R. A. project, and later worked two days a week on another E. R. A. project; both projects consisting of road construction. However, it is shown by the foreman in each instance that he complained of his ankle and that each of the foremen gave him light work to do for that reason. He was limping at the time, and could not use his foot to push a shovel into the dirt. In 1933, plaintiff attempted to farm 15 acres of land, but it is shown he was unable to carry on the operation by himself. He could plow possibly half a day at a time and have to stop, due to the pain he would suffer, and at night, after having attempted to work in the field, his ankle would swell and pain him intensely. Plaintiff's neighbors and those who have known him for many years all testified that he was a willing worker and a man who would stand great pain in attempting to work to provide for his wife and six small children in order to prevent them from being in want of food.

The doctors who testified for plaintiff are positive that he has some injury to his ankle, and place his disability at 25 per cent. The doctors who testified for defendants are equally as positive that he has no disability to his ankle. When plaintiff was discharged by defendant's doctor in November, 1932, the doctor admits there was at the time still some swelling in the ankle, and, after a most careful study of all the medical testimony, we are convinced it shows that on the day of the trial below the injured ankle was some larger than the other. The testimony of the doctors for the defense is based to a great extent upon the showing of the X-ray pictures; but it is well settled that an injury to the ligaments and tendons alone and the parts of the ankle, other than the bony structure, cannot be shown by the X-ray.

For us to hold that plaintiff did not have an injured ankle, we would have to find him to be a malingerer, and the testimony in this case would not justify such a finding. It is admitted the accident occurred, that plaintiff was injured, and we are convinced from all the testimony that the injury to his ankle still exists to the extent of 25 per cent.

It therefore follows that the judgment of the lower court will have to be reversed.

█ Sixty-five per cent. of plaintiff's weekly wages is admitted to be $7.40. He is entitled to 25 per cent. of 65 per cent. of his wages for a period of 125 weeks, less 10 weeks, for which he was paid for total loss of use of the foot. Subparagraph 7 of paragraph (d) of subdivision 1 of section 8 of Act No. 20 of 1914, as amended by Act No. 242 of 1928, p. 357. But since 25 per cent. of 65 per cent. of his weekly wages is less than $3 per week, he is, under the provisions of the Workmen's Compensation Act of this state (Act No. 242 of 1928, p. 357, § 8, subd. 3), entitled to the minimum of $3 per week. Jones v. Southern Advance Bag & Paper Company (La. App.) 157 So. 754.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be reversed; and that there is now judgment for plaintiff, Elzie Bryant, and against Lutesville Sand & Gravel Company and Maryland Casualty Company, in solido, in the sum of $65.42 to cover the period of disability to the foot from September 24, 1932, until December 2, 1932 (the first ten-week period); and further judgment in the sum of $3 per week for the remaining 115 weeks, beginning December 2, 1932, with interest at the rate of 5 per centum per annum on each pay-

ment now past due until paid, less the amount of $65.42 already paid to plaintiff.

It is further ordered that the fee of the attorney representing plaintiff be fixed at 20 per centum of the amount of said judgment, as collected; and for all costs of both courts.