YARRUT, Judge.
Plaintiff, employed as a truck driver for Defendant Newsom Truck Line, Inc., to transport pipes, equipment, and materials to oil field locations, sustained injury to his right knee on October 30, 1961, while assisting in unloading a truck at an oil well site near Lafayette, La., when some pipes broke loose and rolled against his right leg.
Plaintiff was paid compensation and medical expenses until January 7, 1963, when acting on the November, 1962 report of Dr. Irvin Cahen that Plaintiff could return to his truck-driving duties, Defendant insurer stopped further payments. From the date of injury to January 7, 1963, Plaintiff received $2,170.00 compensation and $1,096.88 medical expenses.
Plaintiff now seeks maximum benefits under our Workmen’s Compensation Statute, plus statutory penalties and attorney’s fees for the alleged arbitrary and capricious refusal by Defendant insurer to pay benefits after January 7, 1963.
The district judge rendered judgment decreeing Plaintiff to be totally and permanently disabled and entitled to compensation at $35.00 per week for the period of his disability, not to exceed 400 weeks, subject to credit for amounts already paid; plus medical benefits up to the statutory maximum $2,500.00, subject to credit for amounts already paid. Penalties and attorney’s fees were denied.
From the judgment both Defendants have taken a suspensive appeal; while Plaintiff answered to recover penalties and attorney’s fees.
The district judge in his reasons for judgment erroneously concluded that, since Plaintiff could not return to his former work as an oil field truck driver, he was totally and permanently disabled, viz.:
“The Court is satisfied from the testimony in this case that the plaintiff, although able to drive a track with only slight discomfort, is unable to perform all the duties in connection with his usual occupation as a truck driver. The plaintiff testified that it is sometimes necessary for him *270 to assist in the loading and unloading of the truck which is used to a large extent in carrying pipe and other heavy equipment to oil well drilling sites. It is also necessary that on occasions he must work on the top of the load, which of course is an uneven surface. The roadway is generally made of planks or hoards which the passage of heavy vehicles causes to become dislodged and uneven. It is obvious that the work performed by the plaintiff in these areas is not on a level surface.”
After first being treated in Lafayette, Plaintiff was referred to Dr. Irvin Cahen, a New Orleans orthopedist, on November 6, 1961. Dr. Cahen performed successful corrective surgery and released Plaintiff from the hospital on November 18, 1961. Thereafter, Dr. Cahen’s treatment consisted of cast immobilization and physical therapy. Plaintiff’s knee having improved sufficiently, Dr. Cahen discontinued active treatment April 18, 1962; re-examined him in November, 1962, and found a function disability of the right leg. He advised Plaintiff he could return to his former employment as truck driver but to continue exercising his leg. Dr. Cahen again saw Plaintiff in August, 1963, and January, 1964, but did not find any reason to change his previous conclusion and advice.
Dr. Cahen was able to reconstruct and restore the structure of the right knee so that, by April 18, 1962, he discharged Plaintiff from further active treatment. By November, 1962, Plaintiff’s disability having been reduced to only 15%, Dr. Cahen advised he could return to work.
Dr. Cahen further advised Plaintiff in November, 1962, and again in August, 1963, that by diligent exercise, the disability could be reduced and additional stability restored to the knee.
Dr. George C. Battalora, Sr., an orthopedist, examined Plaintiff in' 1963 in connection with this injury. Dr. Battalora’s reports are part of the record by stipulation. Dr. Battalora testified he felt Plaintiff could drive and walk comfortably and, at the most, would experience some “discomfort” in getting off and on the truck and in squatting, which should gradually diminish. Dr. Battalora, like Dr. Cahen, felt that Plaintiff could continue his occupation, and was not totally disabled.
Dr. Byron Unkauf (for Plaintiff) testified he made but one examination of Plaintiff (in December, 1964), three years after the injury. From his one examination he concluded that Plaintiff had a 25% disability of the right leg, and was of the opinion such work would be dangerous to his knee if he resumed oil field truck driving.
The real issue is whether Plaintiff’s disability sufficiently prevents him from performing work of a general truck driver; not whether he can continue the extra hazardous work of an oil field truck driver.
The legal test for permanent and total disability of a truck driver is whether he can return to the general field of truck driving, not some truck driving specialty. Glidden v. Alexandria Concrete Co., 242 La. 626, 137 So.2d 894.
Since the injury, Plaintiff was employed as a milk truck driver from January 2, 1965 to February 27, 1965. He drove a large trailer milk truck from Kentwood to Alexandria, Louisiana, a trip of from 31/2 to 4 hours, and did no loading or unloading of the truck.
He testified he experienced cramps in his right leg while driving the milk truck, but admitted the pain was a “discomfort,” and not unbearable.
Herbert Gautreaux, a witness who described truck-driving functions and duties, stated it is normal to experience some discomfort in the legs on long trips, and that his employer, as successor to Defendant Newsom Truck Line, Inc., does not *271 permit drivers to continue more than 3 hours at a time. For anyone to experience discomfort when driving a to 4 hour trip would not seem unusual at all in view of Mr. Gautreaux’s testimony.
Plaintiff’s only reason for leaving his milk truck driving job on February, 1965, was that his employer’s business fell off and, as the newest driver, he was dismissed to reduce expenses. Plaintiff admitted he would have continued to work as a milk truck driver until he could get a better job, had he not been dismissed. Thus Plaintiff, by his own testimony, is able to work as a truck driver.
Truck driving in general, not a specific type of truck driving, is Plaintiff’s occupation. Glidden v. Alexandria Concrete Co., supra. His experience as a milk truck driver indicates he can do truck driving in general with some “discomfort” in his leg, notwithstanding which Plaintiff would have continued in that job, had he not been dismissed. Dr. Cahen testified that exercise and using the leg would be beneficial.
Plaintiff admitted he earned $400.00 per month driving the milk truck, and $90.00 to $100.00 a week in his oil field truck job. In fact, Plaintiff earned similar wages as a salesman, since his injury.
The real test to determine the applicability of the rule that an employee who is engaged in a specialized trade, and who contends his injury prevents him from continuing in that trade, is totally and permanently disabled within the meaning of the Compensation Act, is whether such employee is able to do work of any reasonable character comparable to the work he was doing when injured. Brannon v. Zurich, 224 La. 161, 69 So.2d 1; Wright v. National Surety Corp., 221 La. 486, 59 So.2d 695; Morgan v. American Bitumuls Co., 217 La. 968, 47 So.2d 739; Berry v. Higgins, Inc., La.App., 136 So.2d 170.
In the case of Anderson v. Continental Can Co., La.App., 141 So.2d 48, it was held that a truck driver with 10% loss of the use of an arm was not totally and permanently disabled. In this case, Dr. Cahen said, at worst, Plaintiff’s disability was only 15%.
Accordingly, we cannot agree with the finding of permanent and total disability by the district judge and his award of compensation not to exceed 400 weeks.
Since Plaintiff has only a 15% disability of the right leg, he is entitled to no further compensation because the compensation that he has already received ($2,170.00) exceeds the amount payable for this impairment of function, which is $1,750.00, or $10.00 per week for 175 weeks. (He is entitled to the greater amount between 15% of 65% of his weekly wage of $95.00 or $9.26 a week for 175 weeks; or the minimum compensation fixed by the statute of $10.00 a week for 175 weeks.) LSA-R.S. 23:1202, 1221(4) (h).
As Plaintiff has already been overpaid for the entire period of his disability, and has not been disabled from working as a truck driver since January 7, 1963, the judgment of the district court is reversed and judgment rendered dismissing Plaintiff’s suit at his cost.
Judgment reversed and Plaintiff’s suit dismissed.